### Simeon Smith v. Calvin P. Austin and others.

A court of equity will not lend its aid to enforce the right of a volunteer to pay off a mortgage on the lands of another.

Nor will it subrogate such a volunteer to the rights of a mortgagee under a mortgage thus paid.

Where a person other than the mortgagor files a bill to redeem mortgaged premises, the bill must show that complainant has some title or interest in the land derived immediately or remotely through the mortgagor, or in some way springing out of his general equity of redemption. And it must show the nature and derivation of the title or interest claimed, that defendant may, by his answer, admit or deny it, and be prepared to meet it in evidence, or refer the question of its sufficiency to the court by demurrer.

Where, therefore, a bill to redeem, by a person other than the mortgagor, only stated that complainant, after the giving of the mortgage, became interested in the land by contract, but without setting out the contract, or stating the parties, or its terms, or the interest contracted, it was held insufficient.

Nor will recitals in exhibits attached to the bill, and which the bill prays may be made parts thereof with all their averments, which recitals speak of com-

plainant as having "become the purchaser" of the mortgaged premises, aid the bill in this particular; the recitals not showing from whom the purchase was made, nor the interest purchased, nor whether it was subject to the mortgage or not.

*Heard November 13th, 1861. Decided January 15th.*

Appeal from Sanilac Circuit in Chancery.

Complainant filed his bill against Roswell Reed, Calvin P. Austin, William Warner, Frederick S. Ayers and Charles G. Learned, setting forth,

That on March 5, 1855, William A. Howard, who was then owner of certain tracts of land, known as the Port Austin property, containing about nine thousand acres, gave a mortgage thereof to Almet Reed, to secure the payment of $15,000, with interest, which mortgage was assigned to Roswell Reed, December 4, 1855.

That on November 10, 1853, Rollin C. Smith, Alfred A. Dwight and William A. Howard, who were then owners of said Port Austin property, gave another mortgage thereon to Calvin P. Austin, to secure the payment of $30,000, with interest.

That "on the first day of November, 1856, your orator became and was interested in said real estate by contract, and then and there, and for a long time thereafter was and continued to be in the actual possession of all of said premises, and that while your orator was so in possession of said premises, claiming and holding the same, that is to say, on the eighteenth day of March, 1857, the said Roswell Reed, as assignee of the said Almet Reed, filed his certain bill in chancery, in the Circuit Court for the county of Sanilac; that your orator, with the said William A. Howard and his wife, William Warner and his wife, Thomas B. Rose, The Detroit Locomotive Works and William L. Carpenter, were made parties defendants thereto, said bill claiming and setting up the said mortgage of William A. Howard and wife to Almet Reed, and praying for the foreclosure and sale of said premises to satisfy the um due upon said mortgage, and also charging that the

said defendants named therein, including your orator, had and claimed rights and interests in said mortgaged premises, as subsequent purchasers and incumbrancers."

That to this bill Calvin P. Austin was not made a party; that decree was rendered thereon, under which the premises were sold and conveyed to Roswell Reed.

That to protect and secure the rights of complainant in the lands, and his possession and control of the same, and to provide for the payment of the Austin mortgage, complainant on December 28, 1857, by his son and agent, William F. Smith, as party of the first part, entered into an agreement or covenant and declaration of trust, with said Warner, as trustee to said Austin, as party of the second part, which agreement is attached to said bill as exhibit B, and the material portions of which are as follows:.

"Whereas, on the tenth day of November, 1853, Rollin C. Smith, Alfred A. Dwight, and William A. Howard, made and executed to Calvin P. Austin a certain mortgage," describing it, "and the premises so mortgaged are now claimed by Simeon Smith, subject to and after the execution of a trust deed made by said Wm. Warner and his wife, to one Thomas B. Rose, as trustee." "And it being provided by said deed of trust to said Rose, that said Simeon Smith and his agents might manage and operate the said real estate and the steam saw mill thereon, with the fixtures and appurtenances thereunto belonging, for the purpose, amongst other things, of paying the debt secured by said mortgage, and as a further security to that end this instrument is made. Now, therefore, the party of the first part covenants to and with the party of the second part, that he will proceed with all reasonable diligence and dispatch to cause to be cut, felled and got out on said premises, a stock and sufficient number of pine saw logs to supply the mill thereon during the season of the year 1858, for the manufacture of lumber, boards, lath and shingles, and for this purpose to furnish the necessary funds, means,

materials and help for that purpose; and to cause all of said logs, when so got out, to be placed convenient to said mill for use, as soon as practicable to move said logs for that purpose, and in the manufacture of said logs into lumber, lath and shingles."

The agreement then further provides that for the purpose of applying said logs, lumber, lath and shingles to the payment of the Austin mortgage, said Smith thereby made over to said Warner, trustee, all the logs then on the premises, got out since July 1, 1857, and all that should be got out the then present winter and the next spring and summer, and also all the lumber, shingles and lath manufactured therefrom, on the following trusts and conditions : *First*, that Smith should manufacture the logs into lumber, lath and shingles, and before any disposition should be made thereof, should pay to Warner for the use of Austin, $2 stumpage for each thousand feet: *Second*, that Smith should pay from the proceeds of said lumber, &c., all taxes and assessments on the said lands.

The agreement then gives Warner a general oversight of the business of manufacturing the lumber; requires Smith to pay Warner's charges in the execution of the trust; stipulates that if Smith conducts the business and performs the conditions on his part to the satisfaction of Warner, he may continue in the possession and control of the business, and operate the same without hindrance; otherwise Warner was empowered to enter and take possession of the mill, logs, lumber, &c., and have full control thereof, and might proceed to manage the same, and manufacture the logs into lumber, and sell the same, and generally do in relation to the business whatever Austin might have done had the instrument not been made, so far as necessary to pay and discharge the moneys secured by the instrument, and the charges; and if there should be any surplus of logs, money and materials, then the same should be delivered to Smith, or whoever might be entitled

thereto. And one-fourth the amount to be paid to Austin was to be paid by the first day of June then next, and one-fourth on the first day of each month thereafter until the whole sum should be paid.*

This instrument was signed by Smith, and a written acceptance of the trust attached thereto, signed by Warner.

The bill further states, that on December 28, 1857, and as a part of the same transaction, Roswell Reed entered into an agreement with complainant, which is attached as exhibit C to the bill, and which complainant prays may be made and taken, with all its averments, as part and parcel of the bill. This agreement recites that, whereas Smith had become the purchaser of the lands on which are the Austin and Reed mortgages, and to pay and discharge the first of the same has executed and delivered to Warner, a deed or declaration of trust, by which it is contemplated that the logs permitted to be cut on the premises are to be converted into lumber, and that there will be realized from the avails thereof about $8000, during June, July, August and September, 1858, which is to be paid on the Austin mortgage; and the balance thereof is to be paid, one-eighth on each and every first day of June, July, August and September, 1859 and 1860; and that Smith was to pay all taxes; the condition of said agreement was, that if Smith should pay and account to Warner for the stumpage at $2 per thousand for all logs cut on said premises, and from the avails of the logs, pay on the Austin mortgage $8000, during the months of June, July, August and September, 1858, and one-eighth of the balance on each and every first day of June, July, August and September, 1859 and 1860, and

*There would seem to be some omission in this contract, or in the copy given with the record, as to the amount of the payment secured by this instrument. In the body of the bill it is stated that by this agreement $8000 was to be paid by complainant on the Austin mortgage, as follows: $2000 June 1, 1858, and $2000 on the first day of each month thereafter until the same should be paid, being the stumpage of $2 per thousand feet on the lumber actually cut, to be paid before the lumber was actually removed from the dock.

should, by a similar deed of trust or otherwise, satisfacto-
rily secure the payment of such balance, and should pay
in equal proportions during the months of August,
September and October, 1858, all the interest unpaid
on the mortgage to Reed, up to October 25, 1856, with
interest thereon — for which payment the deed of trust
to Warner should stand as security — and should pay the
balance of the interest and principal of the Reed mortgage
in a manner particularly agreed upon and specified, and
on the expiration of the Warner deed of trust, should
by like deed of trust or otherwise, as Reed should require,
secure the payment of the balance of said Reed mortgage,
then said Reed agreed to extend the time for the pay-
ment of his mortgage to the times specified in said agree-
ment. This agreement was signed by Reed alone.

The bill further alleges, that Reed, for the purposes of
this arrangement, made Warner his trustee and agent, to
receive his interest and control said premises; that there
was payable to Austin and Reed during 1858, $10,468,32,
and for taxes and expenses $1,924,87, making in all $12,-
393,19; that complainant paid Warner $8,327,28 in cash,
and lumber to the amount of $4,617,30, making in all
$12,944,58, fully satisfying the requirements of the trusts for
1858, and had besides property to the amount of $6,001,50
on the premises which Warner had the right to take and
sell on default of payment. That for 1859, $15,500 was
to be paid, and $2000 for taxes and expenses; that he
paid in cash and otherwise $13,710,85 up to the middle
of the year; more than was then due; that about the last
of July, 1859, Warner, wrongfully pretending complainant
had not complied with his agreements, seized and took
into his possession the lumber, shingles, &c., amounting to
$12,747,11, which sum complainant claims should be applied
on the mortgages, inasmuch as it was taken by Warner
for the use and benefit of Reed and Austin.

The bill further states that in July, 1859, the defend-

ants Learned and Ayers negotiated with complainant a contract of purchase of an undivided half of said premises, for the sum of $50,000, but that while complainant was in possession thereof, Reed, on August 4, 1859, made a conveyance of the whole thereof to said Learned and Ayers, for the sum of $40,000, under which conveyance they ejected him from the premises, and have been in the possession and use thereof for a year.

The bill alleges that the amounts paid to Warner and the property so taken by him, together with the value of the timber cut by Ayers and Learned on the premises since they took possession, and the rents and profits with which they should be charged, will exceed the amount of the Austin and Reed mortgages; but if not, complainant asks to redeem, and offers to pay any balance. If a balance shall be found in complainant's favor, it asks a decree for the payment thereof. And it prays that Ayers and Learned may be decreed to deed the premises over to complainant, and that the mortgages be satisfied of record.

Reed allowed the bill to be taken as confessed. Ayers and Learned answered. Austin and Warner demurred generally, and on the hearing on the demurrer, the court dismissed the bill, as to all the defendants. Complainant appealed.

*D. C. Holbrook*, in support of the demurrer, argued that the statement in the bill, that complainant "became and was interested in said real estate by contract," without stating any of the particulars of the contract, was insufficient to sustain the bill. The reference to the recitals in the exhibits could not cover this defect in the bill. But the recitals themselves show Rose, and not complainant, to be the person who should have filed the bill. He, as trustee, is the owner of the premises, with Smith in possession for the purpose merely of paying off incumbrances; and Smith's *purchase*, as it is called in exhibit C, is first

subject to the execution of the Rose trust, and *after this,* Smith has a claim.

Complainant is bound to show a good title in himself; and this must appear on the face of the bill, and not be left in doubt, to be finally determined after expensive litigation by the proofs: — *Adams Eq.* 303 *and note* 2; 3 *Beav.* 18; *Ibid.* 284; 1 *Myl. & K.* 61; 2 *Y. & Coll.* 4; 7 *Sim.* 373; 11 *Paige,* 314; 3 *Ired. Eq.* 374; *Story Eq. Pl.* § 341, 5*a.* Averments must be contained in the stating part of the bill; the allegations can not be supplied by inference: — 6 *Paige* 239–51; 22 *Pick.* 55; *Story Eq. Pl.* § 257. Every intendment is against the pleader: — 3 *Hare,* 497.

*A. Russell* and *C. I. Walker,* for complainant:

The essential inquiry is, what interest in the premises will authorize a bill to redeem. A creditor was permitted to redeem, though his debt was released by operation of law, and subsisted in equity only: — *Coote on Mortg.* 539. So one with either legal or equitable title or lien: — 2 *Story Eq.* § 1023; 4 *Kent,* 162. So a purchaser by contract, who can enforce the specific performance of the contract: 3 *Barb. Ch.* 414; 7 *Wis.* 449. So judgment creditors: *Coote on Mort.* 539; 2 *Atk.* 440; 3 *Atk.* 212; 2 *Hare,* 177. So a tenant for years: *Coote,* 539; 22 *Pick.* 404. These and many other cases show that the nature and form of the interest is not the criterion of the right to redeem, but rather the *fact* of *an interest* in the premises: *Greenl. Cruise, Book II., Mortg.* 104–5. As a general rule the rights to foreclose and redeem are reciprocal. In other words, necessary parties to a foreclosure, made such with reference to their interest in the land, may redeem.

In this case, complainant was "interested in the premises by contract," was "in possession claiming and holding the same," and, with the right to manage and operate the same, was the "purchaser thereof."

SMITH v. AUSTIN.

Being then in possession, with a right to redeem, he had a right to make the arrangements he did for paying off the incumbrances. The bill avers that he has paid off Austin. If, then, his right of redemption were cut off as to the Reed mortgage, he would be entitled to be subrogated to the rights of Austin, and to have the Austin mortgage kept alive to protect his right : — 4 *Kent*, 162 ; 8 *Met.* 47 ; 7 *N. H.* 99 ; 5 *Pet.* 480 ; 6 *Gratt.* 320 ; 29 *Mo.* 152 ; 4 *Md. Ch.* 254 ; 13 *Pet.* 125 ; 30 *Vt.* 530. He is therefore entitled to a decree against Austin, either of redemption, if he has such an interest as entitles him to redeem, or of subrogation. As to Warner, it follows that he is entitled to an account.

But the right of redemption was not lost under the foreclosure of the Reed mortgage. If there be an agreement that what would otherwise be a foreclosure shall not so operate, the right to redeem is saved : — 42 *Me.* 32 ; 4 *Greenl.* 495. This is the effect of the agreement with Reed. See also 13 *Ves.* 198 ; 3 *Vt.* 581 ; 8 *Met.* 153 ; 11 *N. H.* 474 ; 6 *N. H.* 12 ; *Greenl. Cruise, Mortg.* 199.

CHRISTIANCY J.:

Does the bill show such title or interest of the complainant in the mortgaged premises as entitles him to the relief asked ? This is the only question presented by the demurrer.

As the facts stated in the bill are somewhat numerous and complicated, and a full abstract of the bill and exhibits will accompany the report, I do not deem it necessary to incorporate such abstract in the opinion, but, for the sake of brevity, shall proceed directly to the main question, the bearing of which will be fully understood by reference to the bill.

The bill is essentially a bill for the redemption of certain lands, from the encumbrance of two mortgages (the prior one executed by William A. Howard, Rollin C.

Smith and Alfred A. Dwight, to defendant Austin, November 10th, 1853, the latter by Howard, then averred to be owner, to Almet Reed, March 5th, 1855, and assigned to defendant Roswell Reed). The bill claims that these mortgages have been satisfied by complainant, and even over paid, in the manner stated in the bill; but, if any balance shall be found still due, he offers to pay it, and if found to be overpaid, he asks a decree in his favor for the excess. To enforce his right of redemption is, however, the chief end and aim of the bill, and the substantial relief sought. The account asked from Warner, the trustee, must be considered as mainly auxiliary to this relief, as a means of showing what has been paid or should be applied upon the mortgages, and the consequent balance; and the right to call for the account as against Warner, is so far dependent upon, or connected with the right of redemption, as against Austin and Reed, that no useful purposes could be subserved by sustaining the bill as one solely for an account, nor by enforcing the account under the present bill, unless a proper case is made for redemption. And every other species of particular relief sought by the bill is auxiliary or incidental to, or dependent upon, the right to redeem.

So far, therefore, as the question raised by the demurrer is involved, the bill may be treated as a bill of redemption only.

If the complainant has shown no title or interest in the premises, he has shown no right to be protected by the redemption; and a court of equity will not lend its aid to enforce his right, as a volunteer, to pay off a mortgage on the lands of another, nor subrogate him to the rights of a mortgagee under a mortgage thus paid by him. But the interest required, as the basis of a right to redeem, need not be the fee subject to the mortgage, or the whole of the mortgagor's original equity of redemption (except in some cases of a statute redemption thus limited).

Any person who may have acquired any interest in the premises, legal or equitable, by operation of law or otherwise, in privity of title with the mortgagor, may redeem, and protect such interest in the land: *Story Eq. Juris.* § 1023. But it must be an interest in the land, and it must be derived in some way, mediate or immediate, from or through, or in the right of the mortgagor; so as, in effect, to constitute a part of the mortgagor's original equity of redemption. Otherwise it can not be affected by the mortgage, and needs no redemption.

But whatever may be the title or interest claimed, it must, in some way, appear on the face of the bill, and the nature and extent of it must be set forth: and, if the bill be not brought by the mortgagor, it must be shown how complainant became entitled to it; unless the bill distinctly sets up some special matter of estoppel, and expressly relies upon it as such.

When a bill for redemption is brought by the mortgagor himself, both parties claim under the same title: the mortgagee, by the acceptance of the mortgage and his claim under it, and all claiming under him, by the fact of such claim, conclusively admit an interest in the mortgagor sufficient for redemption; as their own claim under the mortgage rests upon such interest, which they cannot claim and deny at the same time (though they might, perhaps, under special circumstances show that interest to be less than the mortgagor claimed to convey by the mortgage). But if the bill be brought by any other person than the mortgagor, the title or interest claimed must be derived, immediately or remotely, through the mortgagor, or in some way spring out of his general equity of redemption; and the principles applicable to the statement of a derivative title or interest in pleading must apply to the statement of such title or interest in the bill.

It is a well settled rule of pleading at common law, that a party claiming under a derivative title must show

SMITH v. AUSTIN.

how that title is derived. Thus, in an action by the heir
of a lessor, the death of the ancestor and the descent to.
the plaintiff, as heir, must be shown; and it must appear
*how* he is heir — whether as son or otherwise — and if he
claims by mediate and not immediate descent, he must
show the pedigree; for example, if he claim as nephew,
he must show how he is nephew. And when the plaintiff·
claims as asignee of the reversion by lease and release, or
other conveyance, the nature and operative part of the
conveyance must be set forth. In an action brought by
the assignee of a term, all the mesne assignments down
to himself should be specifically stated; *for he being privy
to them*, shall not be allowed to plead generally that the
estate of the lessee of and in the demised premises came.
to him by assignment. But when the action is brought
*against* the assignee, this general form of stating the *defend-
ant's* interest is sufficient; because the plaintiff is a stranger
to the defendant's title: — 1 *Chit. Pl.* 402, 396, 397. This
is not a technical rule, but is founded in good sense, and
essential to the rights of parties. It is upon principle
equally applicable in equity as at law, and as well recog-
nized there ; and it applies to all derivative titles, whether
of the fee, or of a less estate or interest: — 1 *Dan. Ch.
Pr.* 369 to 371; *Story Eq. Pl.* § 258 *and note: and see*
§ 241. The defendant has a right to be informed of the.
nature and derivation of the title or interest claimed, that
he may, by his answer, admit or deny it, and be prepared
to meet it in evidence, or refer the question of its suffi-
ciency to the court by demurrer. The court, and not the
complainant, is to judge of its sufficiency. If the title or
interest be properly set forth, it may appear to the court
that, what the complainant claims as constituting such title
or interest, constitutes no title or interest at all; and the
parties are saved the expense of all further proceedings.
The facts constituting the complainant's title are supposed,
when the bill shows nothing to the contrary, to be pecu-

liarly within his own knowledge, and the defendant a
stranger to them. The complainant is not to be supposed
to state his case in the way least advantageous to him-
self; and if the facts constituting his case are such as not
to be susceptible of statement in a manner which would
show a valid title or interest, the court may safely take
it for granted he will not be more successful with the
proof.

In such cases, therefore, at least when the question
arises upon demurrer, any ambiguity or uncertainty of lan-
guage should be construed most strongly against the
complainant.

To apply these principles to the present case : the only
statement on the face of the bill of complainant's title or
interest in the mortgaged premises, and that upon which
the bill bases his right to redeem, is in these words :
"And your orator further shows that afterwards" [after
the execution of the two mortgages] "on the first day of
November, 1856, your orator became and was interested
in said real estate by contract, and then and there and
for a long time thereafter was, and continued to be in
actual possession of all of said premises, and that while
your orator was so in possession of said premises, claiming
and holding the same," Reed filed his bill, &c.

It would be difficult to contrive a more indefinite state-
ment of an interest than this, or one which would give
less information of its nature to the defendants or the
court. So far from describing the contract, or stating its
purport or substance, so as to allow the court to judge
whether it created any interest in the land, it does not
even mention the parties by or between whom it was
made, nor a single stipulation it contained. It may have
been a contract between two parties or ten. If it gave
complainant an interest in the land, it may have been a
joint interest with several others who would be necessary
parties to this bill. The contract may have been upon a

condition precedent which complainant has never performed, or the interest created by it defeasible upon condition subsequent, and defeated before the institution of this suit. It may have been such that, by allowing complainant to redeem after permitting Reed's foreclosure bill to be taken as confessed, and the rights of others, which he ought to protect, to be cut off, would operate as a fraud upon them. Or, what is equally probable, though the contract may have related to the land, and in the opinion of complainant created an interest in real estate, it might, in the opinion of the court, have created no such interest. If it be said that these are gratuitous suppositions not proved by any thing found in the bill, I reply that they are not more gratuitous than complainant's assertion of an abstract interest, under a contract alleged as an abstraction, and of which neither the nature, the parties, nor a single stipulation is set forth or described in the bill. If a complainant presents and claims under a blank contract, the court or the opposite party is just as much at liberty to fill the blanks as he is ; and there is just as much proof for either of the suppositions above suggested as for complainant's assertion, that he became interested in the land by contract. It is no where alleged in the bill that he went into possession under it, nor even that he claimed or continued in the possession under it. The statement of complainant's right in the premises would have been quite as strong had he relied upon a naked possession, or at least a bare possession with a claim of title. But this would not be sufficient as a basis for redemption. The possession might be tortious, and both possession and claim might be under a title not in privity with the mortgagor, but hostile or paramount, and which could not therefore be affected by the mortgage.

But uncertain as the interest of the complainant is, this mode of stating it raises a clear, if not a conclusive inference that he had not and did not claim to have the fee,

or the whole of the mortgagor's original equity of redemption. If he had, it would have been quite as easy and much more natural to have said so in plain and unambiguous terms than to have taken this circuitous mode of saying what, when said, amounts to nothing of the kind. It could never occur to counsel to state a fee, or general equity of redemption, in such a formula of words. It is therefore certain that he intended to claim by this language some interest less than the general equity of redemption, and therefore that he did not claim as a purchaser within the ordinary import of the term, but, as I think, some incomplete or inchoate right or interest; some interest, in fact, which did not amount to any definite estate or title known to the law, or it might have been readily described in the bill by its fixed and well defined legal term.

It is therefore, I think, very clear that the matter of the complainant's interest in the lands, is not, so far as it depends upon the allegation alluded to, well pleaded, and that, upon demurrer, the bill must be treated as if this allegation had been entirely left out. The demurrer admits only facts well pleaded, and must therefore be held to be well taken, unless there be something in the exhibits (for there is not a word in the bill) to supply the defect.

But it is insisted by the counsel for the complainant, that this defect is supplied by the recitals in the exhibits B and C referred to, and prayed to be made a part of the bill, both dated December 28, 1857, the former being, in the language of the bill, a "covenant or declaration of trust" made by complainant to defendant, Warner, and the latter an instrument executed by Reed, by which he refers and assents to the former, and agrees, on certain conditions, to extend the time of payment of his mortgage.

It is evident that neither of these instruments, nor both combined, could have been intended as the contract by means of which he "became interested in said real estate by contract;" because, 1st. they were executed more than

a year after the time when he alleges he became thus interested; and secondly, because neither of these instruments purports to give any interest in the lands whatever, and the bill alleges that to Warner to have been made "to protect and secure the rights" of complainant "in said premises." This, upon any fair construction, must be understood as referring to the right already claimed, the "interest by contract."

But admitting the bill to have properly averred an interest in the land, and that such interest had been admitted by Warner, Austin or Reed, the language of the instrument would hardly prove such interest or such admission. It merely recites by way of inducement, that "whereas the premises so mortgaged are now claimed by Simeon Smith subject to and after the execution of a certain trust deed" (probably meaning the execution of the trusts) "made by cne William Warner and his wife, to one Thomas B. Rose as trustee" (to which reference is made generally as of record in the county of Sanilac, and then proceeds) "and it being provided in said trust deed to said Rose, that said Simeon Smith and his agents might manage and operate said real estate and the steam saw mill thereon with the fixtures and appurtenances thereto belonging, for the purpose amongst other things, of paying the debt secured by the said" [Austin] "mortgage hereinbefore referred ·to, and as a further security to that end, this instrument is made."

This recital shows only that complainant *claimed* an interest, (which by the way is left quite as much in the dark as the aforesaid interest by contract), but the other party admits none; the language would seem to have been thus purposely guarded to avoid an admission, and there is nothing in the instrument, even less if possible than in the bill, to show whether the claim was well or ill founded.

The reference to this trust deed to Rose, so far from showing any interest of complainant, only tends to render

still more dubious that interest by contract which was too uncertain before. For, as it states no new interest, this "claim" must be understood as referring back to the contract interest, and this reference shows this "*claim*" of that uncertain interest, to be subject to this trust deed, which, in its terms, is in most particulars quite as uncertain. No date is given. The deed of trust is said to have been given by Warner; but in what capacity does not appear, nor how the title, if it conveyed any, which last appeared in Howard, in March, 1855, without showing how it got there, now at some indefinite period prior to December 28, 1857, suddenly and for an instant becomes visible on its transit through Warner to Rose, where it finally disappears; unless complainant has again discovered it emerging from the foreclosure, and finally resting in Ayers and Learned; but without more elements for determining its orbit, its identity can hardly be relied upon. But it is uncertain whether the trust deed from Warner to Rose conveyed or assumed to convey the title subject to the mortgages, though such would be the most natural inference from the language of the reference. Nor does it appear except by inference that the deed may not have been executed prior to the Reed mortgage. This is the last we hear of Rose or his trust. We had only heard of him before as a defendant in the Reed foreclosure.

Was it this trust deed to Rose by means of which complainant "became interested in said real estate by contract?" If allowed to grope our way by conjecture where all is uncertain, there is much to render this theory probable; yet it would but faintly illuminate the mist in which that "interest," and I may say the title generally, seems to be enveloped by the bill and the exhibits. The only terms of the trust deed which are intimated—and the statement from its context has somewhat the semblance of having been inserted as explanatory of the nature of the complainant's "claim"—show merely that complain-

ant was to have the right to "manage and operate said real estate, for the purpose, among other things, of paying the debt secured by said" [Austin] "mortgage." This alone could hardly constitute an interest in the real estate: the right of a mere volunteer, showing no interest in the land, to pay off the mortgage, could hardly be deemed a valuable right; and the right to operate or work the property for such a purpose would be equally a negative interest.

Does the reference to exhibit C, asked to be taken as a part of the bill, with all its averments, give any greater aid to the bill, or supply the want of a proper averment of title?

This instrument was executed by Reed on the same day as exhibit B, and by way of inducement recites that "whereas, the party of the second part," [the complainant] "has become the purchaser of the mortgaged premises;" and then proceeds to describe the mortgages, the trust instrument to Warner, and Reed's assent to the same, and then sets forth Reed's agreement to give time of payment of his mortgage on condition that complainant pays the Austin mortgage according to the terms of the trust instrument to Warner, and that he pay Reed's mortgage in the manner and by the instalments mentioned.

Supposing it to have been competent for the complainant, by reference, to make a document a part of his bill, in such manner as to give its language the effect of a direct allegation in the bill itself, and to supply the entire absence of any allegation in the bill upon the same point, without showing the effect he intended to claim for it, or the use intended to be made of it, yet giving to this paper the same effect as if its language were inserted verbatim in the bill—and this is the greatest effect that can be claimed for it—how will the case then stand? To say nothing of its form as mere recital, the greatest effect it could have would be an averment that he had become the purchaser (the most natural interpretation of which

would be that he had acquired the fee subject to the mortgages, or the general equity of redemption of the mortgagors) without showing *how*, *when*, or *from whom*, or whether by one conveyance or through several, or the date, parties or purport of any instrument or conveyance through which he claimed to have derived it. But we have already seen that the rules applicable to the statement of a derivative title apply to the statement of complainant's title, as it must be derived from the original equity of redemption. He must therefore show, upon his bill, *how* that title is derived; each of the conveyances must be brought specifically to the notice of the opposite party and the court, according to the well settled rules of equity pleading. Though the nature of the interest is more specific as recited in exhibit C, yet the same rules of pleading apply to the mode of its acquisition as to the "interest by contract" mentioned in the bill, and these rules need no further explanation here. Whether a man has become a purchaser is a mixed question of law and fact, as much as, whether he has obtained an interest by contract. The execution and delivery of the instrument is a question of fact; its effect a question of law.

There is still another difficulty to be noticed. This exhibit C was executed by Reed alone; and however Reed may be affected by it, or Warner, as his trustee, by receiving money under it, I can see no ground on which it could affect Austin, either as matter of pleading or as evidence, unless it operated to transfer to complainant an interest in the mortgaged premises, in which case, if this interest were properly alleged in the bill, it might show a basis for complainant's right to redeem. But complainant does not claim to derive his interest in the land by or through this instrument, nor does it purport to create or convey an interest, nor is it referred to in the bill for any such purpose. Both the bill and the exhibit go upon the assumption that he was already interested by some

other means and in [some other way; though they do not agree as to what that interest was. This instrument, therefore, is entirely outside of any claim of title by which complainant's interest could have been acquired, and was executed long after he claims to have acquired it. It therefore neither gave any new interest in the land, nor increased or diminished any interest he may already have had. The admission, therefore, that complainant had become the purchaser, could only operate, even upon Reed (and perhaps Warner) in one of two ways: either as an estoppel, or as mere evidence: and it is entirely unnecessary here to determine which, since in either view, to give it any effect in favor of complainant on demurrer, there must be some allegation in the bill to be supported by it; or, at least, the general nature of the case made by the bill, and the ground upon which the bill has based his claim, must be clearly consistent with it.

The demurrer was, I think, well taken. But as, from other parts of the bill, it seems quite probable complainant may have strong equities, and upon a bill properly drawn might be able to show a sufficient interest in the land, he should be allowed to amend on payment of costs; and he should be allowed to add other parties, should he deem it essential; and the cause should be remitted to the Circuit Court in Chancery for further proceedings.

It not unfrequently happens, that the ablest counsel may be driven by some emergency in the affairs of his client, or some real or supposed necessity for immediate action, to prepare a bill without sufficient opportunity for investigation of the facts or the law, and without access to all the documents which may be material to the case. The defects in the present bill lead to the supposition that such may have been the case with the able counsel who is understood to have prepared it.

The other Justices concurred.