### Simeon Smith v. Calvin P. Austin and others.

One whose sole interest in lands is under a trust deed by virtue of which he is to become entitled to the lands after payment of the mortgages upon it and certain other specified demands, is not entitled, if he repudiates the trust, to file a bill to redeem from the mortgages.

Nor can he make any arrangement with the holders of the mortgages by virtue of which he is entitled in equity to be subrogated to the rights of the mortgagees without his paying the other demands specified to be paid by him in the trust deed.

*Heard October 22d. Decided November 18th.*

Appeal in Chancery from Sanilac Circuit.

This case was once before in the Supreme Court, and is reported in 9 *Mich.* 465. After the decision then given the bill was amended so as to show:

That on November 10, 1853, Rollin C. Smith and Alfred A. Dwight held the legal title to nine thousand acres of

land in Huron county, known as the Port Austin property, the equitable title to which was in the firms of Smith, Dwight & Co., doing business in Michigan, and William F. Smith & Co., doing business in Ohio, both of which firms were composed of the persons named and William F. Smith, complainant's son, who had saw mills thereon:

That on the day mentioned, said R. C. Smith, Dwight and William A. Howard, loaned from Calvin P. Austin $30,000 for said partnership, to secure which a mortgage was given on said lands:

That on January 3, 1855, R. C. Smith and Dwight conveyed said lands to Howard, who, on the fifth day of March following, gave a mortgage for $15,000 thereon to Almet Reed, and he, in December, 1855, assigned the same to Roswell Reed:

That Howard conveyed the lands to Albert L. Catlin in March, 1855, and Catlin conveyed them to William Warner in October, 1856:

That prior to said conveyance to Howard, the said firms had become insolvent, and the said conveyances to Howard, Catlin & Warner, though absolute in form, were really given for the purpose of securing the payment of debts of said firms.

That William F. Smith, who had had charge of the business of the Ohio firm, being particularly anxious to pay its indebtedness, amounting to about $100,000, induced complainant to co-operate with him in the attempt to manage said property and pay off the incumbrances and indebtedness, for the consideration of what should remain thereafter; said William F. Smith to act as complainant's agent.

That accordingly, at the request and by the procurement and for the benefit of complainant, Warner and his wife, on October 14, 1856, executed a trust deed of said land to Thomas B. Rose. This deed, which recited a consideration of one dollar paid by complainant, conveyed the lands

to Rose as trustee "for whoever are or may hereafter become the lawful holder or holders of a certain contract and certain promissory notes hereinafter mentioned," but upon the following trusts and considerations:

1. That complainant should be put in possession of said property, and the same should be operated, used and managed, and the proceeds disposed of in his name by W. F. Smith, as his agent.

2. Complainant and his agent should apply such proceeds, *first*, to the performance and satisfaction of a contract between himself and Warner and Catlin of even date, for goods, feed, supplies, teams and other personal lumber property; *second*, to the payment and satisfaction of the incumbrances to the extent necessary to prevent the title of the property, or any of it, from passing by virtue of foreclosure; *third*, to the payment of twelve notes made by said W. F. Smith in favor of certain parties in Ohio, amounting to $29,465; *fourth*, to the payment of a note made by said W. F. Smith to Catlin for $4,000; *fifth*, to the payment of an acceptance of Smith, Dwight & Co., of $3,000, and two drafts drawn in favor of parties in Ohio, by W. F. Smith & Co., for $4,000; *sixth*, to the payment of nine notes made by W. F. Smith, to parties in Ohio, amounting to $35,000; *seventh*, to the payment of three other notes amounting to $5,162.

3. So long as complainant and his said agent should perform the contract with Warner and Catlin, and make the said payments, and perform all other conditions and requirements of the trust deed, they were to retain the property, and operate, use and manage the same, with the right of disposing of the products for the purposes aforesaid.

4. If they should fail in fulfilling the obligations of the Warner & Catlin contract, or of the notes, or of the trust deed, the trustee might take possession of the property, and operate the same, and apply the net avails in the manner above pointed out, and if the same should not

be sufficient to pay all, after satisfying said contract and inducing the holders of the incumbrances not to foreclose, then to pay the successive classes in their order, and when all were paid the title to the property was to pass to complainant.

5. If complainant and his agent should fail to perform the conditions of the Warner & Catlin contract, or to manage the property and dispose of the products with sound business discretion, or fail for three months to pay any of said notes as the same should come due, it should be the duty of the trustee, on the written application of the holder of said contract, or of six-tenths the amount of said notes then outstanding, to take possession of said property and operate the same, and dispose of the products in manner aforesaid; and on like application to make sale of said property and pay over the proceeds in like manner, and the balance, if any, to complainant.

After the Warner & Catlin contract was satisfied, complainant might, with the approval of the trustee, sell the lands, and apply the proceeds, first to the encumbrances, and next to the satisfaction of said debts; and the trustee was to execute the proper conveyances. And on the full performance of all the conditions of the trust deed, the title to the property, or to what should remain, was to vest in complainant.

There were other provisions in the trust deed not necessary to be mentioned here.

The bill then sets forth that complainant took possession of said lands, and invested about $20,000 in supplies, &c., to carry on the business; that he continued to manage the property up to the close of 1857, and paid off about $20,000 of the debts provided for by the trust deed; that that year proved one of commercial disaster, and Roswell Reed, becoming convinced that complainant could not pay his mortgage and meet the requirements of said trust, filed his bill in chancery against complainant, Rose and others,

to foreclose the same; that complainant also became convinced he could not pay the Ohio indebtedness and also the mortgages, and being desirous to save at least what he had been induced to put into said property, being about $30,000, made, agreements with the holders of said mortgages pending said foreclosure proceedings, for an extension thereof so far as regards complainant, which agreements were made by complainant on his own behalf as an individual, for his own protection, to enable him, if possible, to get back his advances, and not for the benefit of the creditors provided for under the Rose trust. These agreements—one being with Warner as trustee for Austin, and the other with Reed—are set forth at length in the bill, and provide for the payment of the mortgages by complainant in certain instalments, to Warner as trustee for Reed and Austin. The bill states that complainant, relying on these agreements, paid no further attention to the foreclosure proceedings, and in pursuance of them the premises were sold and bid off by said Roswell Reed. The bill alleges that complainant made the payments as they became due under these agreements, until the last day of July, 1859, when Warner, as trustee of Reed and Austin, on the pretence that complainant had not complied with his agreement, took possession of the trust property. The bill then, after setting forth various other facts not material to be here recited, asks an account, and a redemption from said mortgages, or that he be declared subrogated to the places of said Austin and Reed as purchaser or assignee of their said mortgages, and that the same be declared valid and subsisting liens upon the property in favor of complainant.

Austin and Warner demurred to this bill, and the Court below sustained the demurrer and dismissed the bill. Complainant appealed.

*C. I. Walker*, and *A. Russell*, for complainant.

*G. V. N. Lothrop*, and *D. C. Holbrook*, for defendants.

CHRISTIANCY J.:

This case comes before us for the second time on demurrer to complainant's bill. The decision of the case as formerly presented, 9 *Mich.* 465, disposes of several questions which might otherwise arise.

The only questions which remain to be decided on the present demurrer to the amended bill, are those which grow out of the trust deed to Rose, which was not set forth nor its provisions sufficiently described in the former bill to enable us to judge of its effect upon the rights of the parties. The complainant there alleged that he was interested in the mortgaged premises by contract, but set forth no contract giving him an interest. And we there held that there was nothing in the trust instrument to Warner, nor in the contract with Reed, which gave him a right to redeem, or which would entitle him to be subrogated to the rights of a mortgagee under the Austin or Reed, mortgage, by paying them off, according to the terms of the trust instrument to Warner and of the contract with Reed; but that, without showing any interest in the premises derived from the mortgagors, and subject to the mortgages, he stood in the position of a mere volunteer or stranger. If, then, the complainant has, by his present bill shown any interest in the mortgaged premises to entitle him to redeem, or to have the mortgages released, or to subrogation under them on payment, that interest and the right of subrogation must be founded upon or grow out of the trust deed to Rose.

It is manifest from an examination of this deed, that no beneficial interest was to vest in complainant until the full payment of the Warner & Catlin contract, as well as of all the five classes of creditors known as the Ohio creditors (the claims of the latter amounting to some

$70,000) ; and that it was for the complainant so far to pay .or take care of the Austin and Reed mortgages as to prevent the mortgaged premises being lost by foreclosure before all the above mentioned claims should be paid; and that if the property should be sold, either by the trustee, or, with his approval, by the complainant or his agent, under the qualified power contained in the trust deed, complainant would be entitled only to such balance of the proceeds as should remain after full payment of all these claims.  It is true the deed, being executed only by Warner and wife, and not by complainant, did not, of itself, bind the complainant to pay these claims, but such payment (and the protection of the property from foreclosure until such payment) constituted the condition upon which alone he could obtain any interest in the mortgaged premises, or their proceeds if sold.

This deed, the bill alleges, was executed and delivered by Warner to Rose, at the request and by the procurement and for the benefit of the complainant.  He states, and it is clear from the whole bill, that he went into possession and managed the property under this trust up to the close of the year 1857, and paid off about twenty thousand dollars of the debts therein provided for.  It is clear also that it was by this instrument alone that he obtained any right to enter into the possession or in any, manner to interfere with the property, and that by this alone, and his possession under it, be obtained whatever right and power he possessed of entering into the trust agreement with Warner, of December 28, 1857, and the dependent agreement of the same date with Reed.  The trust instrument to Warner professes on its face to be made subject and subordinate to the Rose trust, and the agreement with Reed refers to and adopts the Warner trust agreement. Both these agreements relate to the payment of the mortgages, against which, by the Rose trust, it was the duty of complainant to protect the property by payment or

otherwise, and are therefore merely subsidiary to the Rose trust.

Doubtless this Rose trust, while it remained open and subject to be performed by complainant, and not abandoned or repudiated by him, might constitute a sufficient interest in complainant to enable him to maintain a bill for redemption or release of the mortgages, and perhaps for subrogation under them, if the case were such in other respects as to call for such subrogation; but that interest would be subject to all the trusts and conditions of the Rose trust deed until performance of the conditions by complainant. And, admitting that complainant, after, as he alleges, having gone into possession and paid off some twenty thousand dollars of the debts, might have repudiated or abandoned the trusts, without any liability on his part to pay more; yet if he elected to do this, he could have no claim, legal or equitable, for the amount he had so expended; since it was only upon the faith of his paying this and a much larger sum, that he was permitted to go into possession, or to obtain any interest in the property. When, therefore, he declares his inability, or repudiates all obligation, to make the payments which constituted the condition upon which his interest was to depend, he abandons or repudiates all interest in the mortgaged premises, and stands as a mere stranger or volunteer, without any interest whatever in the premises, or in the redemption or release of the mortgages. This, and even worse than this, is the position in which the complainant has placed himself by his present bill; for after having alleged his going into possession and paying off some twenty thousand dollars of the debts, and stated the filing of Reed's bill of foreclosure, he goes on to say that "your orator became also convinced that he could not pay said Ohio indebtedness, and also said mortgages, and desiring to save at least what he had been induced to put into said property, being about thirty thousand dollars, pending the said foreclosure proceedings made cer-

11 MICH.—D.

tain agreements with the holders of said mortgages for an extension thereof" — referring to said trust instrument to Warner, and the Reed contract — "as far as regarded your orator, one of the defendants in said proceedings; that said agreements were made on the part and behalf of your orator, *as an individual,* for his own protection, to enable him if possible to get back his advances, *and not for the benefit of the creditors provided for under said Rose trust.*" So far, therefore, from claiming in subordination to the Rose trust, or offering to perform its conditions, or asking relief for the purpose of enabling him so to do, this is a clear repudiation of that trust. He claims his interest under this trust deed, and yet asks the court to aid him in defeating it, that he may obtain its benefits without bearing the burdens upon which alone those benefits were to depend. He claims under and against the instrument at the same time, and asks the aid of the Court to enable him to defeat the Ohio creditors, to the amount of seventy thousand dollars or more, which by the same instrument he was to pay as a condition precedent to the vesting of any interest of his own; and asks to be allowed to redeem the Austin and Reed mortgages, and to be subrogated to their rights under them, for the purpose of cutting off and defeating the claims of those creditors, when by the terms of the very instrument under which he claims, it was his duty, as a condition precedent to any rights of his own, to protect the property for the benefit of those creditors against these very mortgages. This, in plain English, is asking the Court to aid him to perpetrate a fraud upon the creditors provided for under that trust, and whose interests were by that very instrument made paramount to his own. This no court could permit, though all the parties to the suit should fail to make the objection.

It is no answer to this objection to say that these Ohio creditors were cut off by the foreclosure of the Reed

SMITH *v.* AUSTIN.

mortgage against Rose, the trustee, who was a party to the foreclosure, when it was the complainant's duty to those creditors to have protected the property from that fore-closure, and when, as assumed by the bill itself, complainant was not bound by that foreclosure. He could only be allowed, therefore, to set aside that foreclosure *for their benefit* as well as his own, and in preference to his own rights. This he has not asked, but he asks that their rights may be cut off while his are protected.

The decree of the Court below, allowing the demurrer and dismissing the bill, must be affirmed, with costs.

The other Justices concurred.