BAILEY SQUIRE v. OSBORNE WRIGHT AND GEORGE F. WRIGHT.

*Mortgage foreclosure—Redemption.*

This case involves the question of the right of the brother of a mortgagor, who had been absent from his home for about two years, and whose whereabouts were unknown, and who had been reported as dead, but which fact was incapable of proof, to redeem the absent brother's land from a statutory foreclosure sale in the name of such brother, which right of redemption is sustained under the circumstances of this case.

Appeal from Saginaw. (Edget, J.) Argued February 11, 1891. Decided February 27, 1891:

Bill to set aside an attempted redemption from mortgage sale. Defendant Osborne Wright appeals. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*A. H. Swarthout,* for complainant, contended:

1. There is no presumption of death from absence until the expiration of seven years, but the presumption may be raised by evidence of habits, character, surroundings, or anything that will show the improbability of long continued absence, or by showing diligent inquiry and search; citing *Bailey v. Bailey,* 36 Mich. 181; *Cox v. Ellsworth,* 18 Neb. 664; but a party must be treated as alive in the absence of proof of death within the seven years, or of sufficient evidence to raise the presumption of death; citing *Stevens v. McNamara,* 36 Me. 176; *O'Gara .v. Eisenlohr,* 38 N. Y. 296; *Wilson v. Brownlee,* 91 Amer. Dec. 526 (note): *Sprigg v. Moale,* 92 Id. 704 (note); and such presumption may be rebutted by showing that the person left suddenly to avoid arrest; citing *O'Kelly v. Felker,* 71 Ga. 775; and a rumor that an absent person is dead is not admissible to raise a presumption of his death; citing *Johnson v. Johnson,* 114 Ill. 611; and, in order to take advantage of such presumption, it must exist at the time the advantage is claimed; citing *Whiteley v. Assurance Soc'y,* 72 Wis. 170.

2. Defendant, in order to redeem, must have had a subsisting legal or equitable right or interest in the property; citing *Sherwood v. Underwood,* 28 Mich. 427; *Lamb v. Jeffrey,* 47 Id. 28; *Millard v. Truax,* 50 Id. 343; and it must be derived directly or indirectly from or through the rights of the mortgagor, so that he is in privity of title with the mortgagor, and owner in part of his original equity of redemption; citing Jones, Mort. § 1055; *Grant v. Duane,* 9 Johns. 612; *Brainard v. Cooper,* 10 N. Y. 356; *Gage v. Brewster,* 31 Id. 222; *Insurance Co. v. Insurance Co.,* 1 Paige, 284; and as to who stands in such privity, see *Packer v. Railroad Co.,* 17 N. Y. 283.

*Trask & Smith,* for appellant, contended:

1. A presumption of death may be established by an absence of less than seven years; citing *Cox v. Ellsworth,* 18 Neb. 664; *Tisdale v. Insurance Co.,* 26 Iowa, 170; *Ryan v. Tudor,* 31 Kan. 366; *Sensenderfer v. Insurance Co.,* 19 Fed. Rep. 68.

CHAMPLIN, C. J. In 1885, and for some 10 years prior thereto, defendant George F. Wright was the owner and in possession of and improving the E. ½ of the W. ½ of the S. W. ¼ of section 33, in township 13 N., range 4 E., in Saginaw county, Mich. He was a single man. The land is stated in complainant's bill to be worth at

least $1,200. The testimony shows that it was worth $35 an acre On May 5, 1882, defendant George F. Wright gave a mortgage on this farm to Caroline Jasperson to secure the payment of $400. This mortgage was assigned by the mortgagee to Joseph Daoust, and by said Daoust foreclosed by advertisement, the sale occuring on August 28, 1886. At said sale the complainant bid, and the premises were struck off to him as the highest bidder for $507, being more than sufficient to pay the mortgage debt and costs. He received the sheriff's deed, which was duly filed in the register's office of said county, and he at once took possession of the premises.

George F. Wright had been in the habit of working on his land and for his neighbors in the summer, and in the lumber woods in the winter, and in the fall of 1885 he left his land to go to the woods, and has not since returned. The testimony shows that just prior to his leaving in the fall of 1885 he had been arrested for the crime of larceny, and had been fined $50. It also appears that he had been told that he would be again arrested, but for what offense does not appear. In the mean time, between the sale of the property under the foreclosure and before the time for redemption had expired, rumors were circulated that George F. Wright had been killed in the woods, and such report reached his father and family, who resided in Canada. They tried to communicate with him, and, after getting no replies to letters addressed to him, wrote to others known by them in Michigan, but could get no information. Finally, in July, 1887, the father received a letter from William E. Crane, offering to buy from him as heir at law of his son the right of redemption from the foreclosure sale, and at the same time informing him that his son George was reported to have been killed in the woods; that the mortgage had been foreclosed, and the right of redemption

was about to expire. Acting upon this information, and believing that his son was dead, the father, Nathaniel Wright, executed a deed of the land as heir at law of George F. Wright to another son, Osborne Wright, and he came to Saginaw to redeem the land. Upon his arrival he learned that it was claimed that a man by the name of Sherping had seen George F. Wright in the fall of 1886, which was after the sale of the land on the foreclosure proceedings, and after the time it had been reported that he was killed in the woods. The report seemed so well founded that, although he could not get a personal interview with Sherping because of his absence from home, yet he spent the time from his arrival up to the last day for redemption making inquiries to see if he could get any trace of his brother, and, not being able to do so, on the last day for redemption he paid the necessary amount to redeem the land to the register of deeds of Saginaw county, saying that he redeemed for George F. Wright, if living, and if not living then for himself.

The register of deeds made the customary entries required by the statute, but complainant refused to accept the money from the register, and filed his bill of complaint in this cause on April 21, 1888,[1] claiming—

1. That Osborne Wright had no authority from George F. Wright, mortgagor, to redeem for him, and that without such authority he could not redeem.

2. That Osborne Wright had no interest in the land that would entitle him to redeem.

The relief prayed for is that the payment by Osborne Wright of the money to the register of deeds for the purpose of redemption may be decreed by this court to effect no redemption of the said land from the mortgage

---

[1] The original bill was filed as of this date, and demurrer thereto sustained, and an amended bill filed May 27, 1889.

foreclosure sale, and that the title to said described land may be decreed by this court to be in complainant, and that the register of deeds pay to Osborne Wright the money paid by him to said register, after deducting the costs by this complainant in this suit sustained, and that he may have such other relief and such further relief as shall be agreeable to equity and good conscience.

The defendant Osborne Wright answered, admitting that he had no direct authority from said George F. Wright to make such redemption, or any authority to do so from him, except as set forth and described in his answer. Further answering, he says that George F. Wright is a brother of his, and further setting forth the circumstances of his brother's leaving the place in the fall of 1885, and that he never returned, and that the rumor reached the defendant and other relatives that said George F. Wright had been killed by an accident in the woods; that during the latter part of the year 1886, and the forepart of the year 1887, the defendant and other relatives tried by correspondence to ascertain the facts in regard to his brother, and sometime in the forepart of the year 1887 the defendant and said relatives learned that it was claimed that the mortgage had been foreclosed upon said George F. Wright's property, and that the redemption would expire in August; that at this time the relatives of said George F. Wright, including the defendant, supposed without doubt that his brother was dead, and, if so, his father would inherit his property; that his father executed to the defendant Osborne Wright a deed of said land, and he came to Saginaw, Mich., to redeem the same; that, upon his arriving at Saginaw, rumors reached the defendant that his said brother was not dead, and upon inquiry said rumors seemed so well based that the defendant was led to doubt the death of his said brother, and began to seek anew for information

as to whether he was living or dead. He continued his investigations up to the very last day for the redemption of said land, without being able to learn whether said brother was dead or alive, and on said last day he deposited said money witn the register of deeds, as set forth in the bill of complaint, to redeem said land for the brother, if living; if not living, for himself. He further says that he has not, neither have any relatives to his knowledge and belief, heard from said George F. Wright, either directly or in any other manner, except by way of rumor, since he went into the woods in the fall of 1885, and did not then know whether he was living or dead.

Proofs were taken in said cause in open court, and testimony was introduced tending to show that George F. Wright was living as late as 1886. Among other testimony introduced was a letter from the defendant George F. Wright to a Mr. Kremer, which reads as follows:

"March 19, 1886.

"Mr. Kremer,—

"Sir: I wish to inform you, if you wish to buy my place that you have Mrs. Jasperson's notes against, I will let it go cheap,—If you will let me have $800 and pay off the mortgage; I think that is reasonable. You can get $1,400 for it any time. If you wish to purchase you can have the money at 7 per cent. to loan, or, if you do not wish to purchase, I will give you 5 per cent., and hire what it will take to pay off the mortgage for four years at 8 per cent. If you will let me have the money, please let me know, and I will make everything satisfactory the first of April, or a few days later. I will state to you, if you will purchase for cash, I will take 5 per cent. less.

"Yours truly, George F. Wright."

Mr. Kremer was the register of deeds for Saginaw county, and at the time he received the letter had the

85 Mich.—6.

notes and mortgage in his possession for collection. He states that he answered this letter but received no reply.

We do not feel called upon to determine from the testimony whether George F. Wright was dead or was living at the time the period of redemption expired. If it were necessary, however, we probably should reach the conclusion which the circuit judge did, and should find from the weight of testimony that George F. Wright, the mortgagor, is still living. The testimony of his brother is that, if living, he would be 41 years old; and presumption of life continues until it is rebutted by proof of death, or an entire absence of 7 years, during which time his relatives, friends, and neighbors have heard nothing from him or of him denoting that he is still living. If, however, he was dead at the time of the execution of the deed from his father, defendant Osborne Wright was entitled to redeem.

The important question, as I view the case, is whether, if the mortgagor was still living and absent from home under the circumstances detailed in the testimony, his brother had a right to redeem the premises for and in the name of George F. Wright. I think he had. It was a gratuitous service rendered in behalf of his brother, and for his brother's benefit, to save his property, worth $1,400, from being sacrificed for a debt of $507. The basis of complainant's right until redemption had expired was a debt which the mortgagor must pay or lose his property. The circumstances are peculiar. George F. Wright may have become insane or imprisoned. He may be, and the testimony shows that he was, a person not intellectually bright, and his fears may have been so worked upon by threats of being arrested that he dare not return to his home, though what he was to be arrested for does not appear. His whereabouts are

unknown. He may be dead, but that fact is incapable of proof. Shall his heirs be obliged to lose their inheritance in the one case, or, in the other, shall no relative by blood be permitted to step in and save the property for his brother's benefit? The circumstances are such that, in my judgment, authority should be presumed from the necessity of the case. If, during the time for redemption after the sale, the mortgagor had been stricken with insanity, can it be said that his brother would have had no right to redeem the premises for him? The complainant comes into a court of equity and asks for relief. He does not ask that he may receive the money paid on the purchase and its use. That he refuses under circumstances which make it extremely conscionable that he should receive it. But the relief he asks is that the land may be decreed to be his, and that there has been no redemption from said foreclosure sale. This, I think, is inequitable under the facts of this case; but, if there has been no redemption, the relief asked for is a matter of strict right, and he is entitled to the aid of the court to enforce and protect it.

The same principle should be applied to redemption from mortgage sale that applies to a tender of money for the payment of a debt. It was long ago held that any person may make a tender on behalf of an idiot, and the reason given is that the law, by reason of his utter inability to act for himself, allows this to be done out of charity. Co. Litt. 206b. And in *Brown v. Dysinger*, 1 Rawle, 408, a tender of money in behalf of an infant was made by an uncle, the father being dead and the mother living, and it was held to be good although the uncle had not then been appointed guardian. It is true that in these cases the parties for whose benefit the tenders were made were under legal disabilities to act for themselves, but they recognize the doctrine that agency and

authority to act may be presumed where the necessities of the case warrant the inference. The point has not hitherto been passed upon by this Court. It was laid down as law in *Smith v. Austin*, 9 Mich. 474, that a court of equity will not lend its aid to enforce the right of a volunteer to pay off a mortgage on the lands of another, nor subrogate him to the rights of a mortgagee under a mortgage thus paid off. And it was then said that—

"Any person who may have acquired any interest in the premises, legal or equitable, by operation of law or otherwise, in privity of title with the mortgagor, may redeem and protect such interest in the land. But it must be an interest in the land, and it must be derived in some way, mediate or immediate, from or through, or in the right of, the mortgagor, so as in effect to constitute a part of the mortgagor's original equity of redemption. Otherwise it cannot be affected by the mortgage, and needs no redemption."

In *Sinclair v. Learned*, 51 Mich. 335, the plaintiff had no connection with the title held by the mortgagor at the time the mortgage was foreclosed. His only interest was derived through tax-title deeds made by the Auditor General on delinquent tax sales. He tendered the amount due upon the mortgage not in behalf of the mortgagor, but in his own behalf. Mr. Justice COOLEY said:

"He was not mortgagor, or the grantee of the mortgagor, or in any manner at that time interested in the equity of redemption. He had tax titles it is true, but these were not subject to the mortgage. There was no offer to show that the tender was made for or in the interest or at the request of the mortgagor. It was therefore made by one who, as between the mortgagor and mortgagee, was a stranger to their dealings and an intermeddler. Nothing is plainer than that such a person has no right of redemption."

In this case Osborne Wright does not appear here as an interloper. He tendered the money as the grantee of

the heir at law if the mortgagor was dead, and this he had a right to do. But, if the mortgagor was not dead, he made the tender for and in the interest of the mortgagor, and this we think he had a right to do under the circumstances.

The decree of the circuit court is reversed, and the bill dismissed, with costs of both courts.

MORSE, McGRATH, and GRANT, JJ., concurred. LONG, J., did not sit.